1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICIA PACKER, | ) Case No. ED CV 10-0231 JCG |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.**

**INTRODUCTION AND SUMMARY**

On February 23, 2010, plaintiff Patricia Packer ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 3.]

On November 17, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 22, 23, 24.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, there is substantial evidence in the record, taken as a whole, to support the decision of the Administrative Law Judge ("ALJ"). Thus, the Court affirms the Commissioner's

1    decision denying benefits.

2                                    **II.**

3              **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

4         Plaintiff, who was 51 years old on the date of her most recent administrative

5    hearing, has completed high school and paramedics training.  (*See* Administrative

6    Record ("AR") at 100, 399, 675.)

7         On December 3, 2004,[1] Plaintiff filed for DIB and SSI, alleging that she has

8    been disabled since October 23, 2004 due to chest pain, headaches, depression,

9    bipolar disorder, anxiety, asthma, arthritis, carpal tunnel, muscle spasms, acid reflux

10   and a hernia.  (*See* AR at 12, 53, 65, 94-95, 350.)

11        On October 23, 2009, Plaintiff, represented by counsel, appeared and testified

12   at a hearing before an ALJ.  (*See* AR at 675-705.)  The ALJ also heard testimony

13   from Troy Scott, a vocational expert ("VE").  (*Id.*)

14        On December 11, 2009, the ALJ issued a partially favorable decision, finding

15   Plaintiff disabled as of June 1, 2009.  (AR at 12-23.)  Applying the well-known five-

16   step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not

17   engaged in substantial gainful activity since her alleged onset date.  (*Id.* at 14.)

18        At step two, the ALJ found that Plaintiff suffers from severe impairments

19   consisting of "morbid obesity; disorder of the lumbar spine; obstructive sleep apnea;

20   asthma; inguinal hernia repair, status post surgical repair, wound infection, and

21   cellulitis; mood disorder, not otherwise specified; and anxiety disorder, not

22   otherwise specified."  (AR at 14 (emphasis omitted).)

23   _____

24      [1]  Plaintiff subsequently filed for DIB and SSI on January 28, 2008.  (*See* AR at
     399-402, 403-406.)  Her second set of applications were combined with her
25   December 3, 2004 applications.  (*Id.* at 12.)

26        The Court also notes that Plaintiff previously appealed a denial of her
     applications in this Court, Case No. ED CV 07-1695 VBK.  (*See* AR at 371-81.)
27   However, a recitation of Plaintiff's lengthy procedural history is not pertinent to the
28   discussion here.

1   At step three, the ALJ determined that the evidence did not demonstrate that
2   Plaintiff's impairments, either individually or in combination, met or medically
3   equaled the severity of any listing set forth in the Social Security regulations.[2]  (AR
4   at 15.)

5   The ALJ then assessed Plaintiff's residual functional capacity[3] ("RFC") and
6   determined that, prior to June 1, 2009, she could perform light work.  (AR at 15.)
7   Specifically, the ALJ found that Plaintiff could

8       lift and/or carry 20 pounds occasionally and 10 pounds
9       frequently; stand and/or walk 6 hours in an 8-hour workday with
10      normal breaks; sit 6 hours in an 8-hour workday with normal
11      breaks; occasional climbing ramps or stairs; no climbing ladders,
12      ropes or scaffold; and frequent postural activities including
13      balancing, bending, stooping, crouching, and kneeling.  Mentally,
14      [Plaintiff] could not perform high-quota, production-rate pace (ie,
15      rapid assembly line work); no safety operations or responsibility
16      for the safety of others; no jobs requiring hypervigilence; and no
17      work around dangerous machinery or unprotected heights.
18  (*Id.* (emphasis omitted).)

19  The ALJ further found that "[b]eginning on June 1, 2009, [Plaintiff's RFC]
20  had declined to the point that she could stand/walk less than 2 hours and sit less than
21  6 hours per day.  Because she would not be able to work an 8-hour workday, she

---

23  [2]   *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

25  [3]   Residual functional capacity is what a claimant can still do despite existing
26  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155
    n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
27  ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's
    residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th
28  Cir. 2007).

1    could perform less than sedentary work."[4/]  (AR at 21 (emphasis omitted).)

2         The ALJ found, at step four, that Plaintiff lacks the ability to perform her past
3    relevant work.  (AR at 21.)

4         At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found
5    that, prior to June 1, 2009, "there were jobs that existed in significant numbers in the
6    national economy that [Plaintiff] could have performed," such as cafeteria worker,
7    food preparation worker, and maid.  (AR at 21-22 (emphasis omitted).)  The ALJ
8    further found that "[b]eginning on June 1, 2009, . . . there are no jobs that exist in
9    significant numbers in the national economy that [Plaintiff] can perform."  (*Id.*)

10        Thus, the ALJ concluded that, prior to June 1, 2009, Plaintiff was not
11   suffering from a disability as defined by the Act.  (AR at 13, 23.)

12        Plaintiff did not file a request for review by the Appeals Council of the ALJ's
13   partially-favorable decision.  (Joint Stip. at 3.)  The ALJ's decision stands as the
14   final decision of the Commissioner.

15                              **III.**
16                        **STANDARD OF REVIEW**

17        This Court is empowered to review decisions by the Commissioner to deny
18   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
19   Administration must be upheld if they are free of legal error and supported by
20   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*
21   *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings
22   are based on legal error or are not supported by substantial evidence in the record,
23   the court may reject the findings and set aside the decision to deny benefits.
24   *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,
25   242 F.3d 1144, 1147 (9th Cir. 2001).

26

27        [4/]  In "June of '09," Plaintiff received surgery for a hernia and suffered from
28   complications after the surgery.  (*See* AR at 680-81, 687.)

                                  4

1    "Substantial evidence is more than a mere scintilla, but less than a

2    preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant

3    evidence which a reasonable person might accept as adequate to support a

4    conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d

5    at 459.  To determine whether substantial evidence supports the ALJ's finding, the

6    reviewing court must review the administrative record as a whole, "weighing both

7    the evidence that supports and the evidence that detracts from the ALJ's

8    conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

9    simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d

10   at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the

11   evidence can reasonably support either affirming or reversing the ALJ's decision,

12   the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.*

13   (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

14                                              **IV.**

15                                   **ISSUES PRESENTED**

16          Two disputed issues are presented for decision here:

17          1.     whether the ALJ properly discounted the lay witness testimony, (*see*

18   Joint Stip. at 12-16, 18); and

19          2.     whether the ALJ properly considered Plaintiff's obesity.  (*Id.* at 3-8,

20   12.)

21          The Court addresses each argument in turn.

22                                              **V.**

23                          **DISCUSSION AND ANALYSIS**

24          A.     Lay Witness Statements

25          Plaintiff contends that the ALJ failed to properly consider the lay witness

26   statements of Runell Packer ("Ms. Packer"), Plaintiff's sister.  (Joint Stip. at 12.)

27   Plaintiff maintains that "[a]lthough the ALJ mentions that plaintiff's sister

28   completed the [Adult Function Report], reiterated some of her statements she made

                                                 5

1   regarding plaintiff's condition, and found this evidence not fully credible, he

2   specifically failed to indicate which parts of statements that he found not fully

3   credible" and "failed to provide germane reasons for rejecting plaintiff's sister's

4   significant and credible statements." (*Id.* at 15.)

5             1.    The ALJ Must Provide Reasons Germane to Lay Witness to

6                   Discount Such Statements

7         "[L]ay testimony as to a claimant's symptoms or how an impairment affects

8   ability to work *is* competent evidence and therefore *cannot* be disregarded without

9   comment." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal

10  quotation marks, ellipses and citation omitted) (italics in original); *see Smolen v.*

11  *Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1513(d)(4)

12  (explaining that Commissioner will consider evidence from "non-medical

13  sources[,]" including "spouses, parents and other caregivers, siblings, other relatives,

14  friends, neighbors, and clergy[,]" in determining how a claimant's impairments

15  affect his or her ability to work) & 416.913(d)(4) (same).

16        The ALJ may only discount the testimony of lay witnesses if he provides

17  specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915,

18  919 (9th Cir. 1993); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay

19  testimony as to a claimant's symptoms is competent evidence that an ALJ must take

20  into account, unless he or she expressly determines to disregard such testimony and

21  gives reasons germane to each witness for doing so.").

22        Finally, "where the ALJ's error lies in a failure to properly discuss competent

23  lay testimony favorable to the claimant, a reviewing court cannot consider the error

24  harmless unless it can confidently conclude that no reasonable ALJ, when fully

25  crediting the testimony, could have reached a different disability determination."

26  *Stout*, 454 F.3d at 1056.

27

28

1          2.      The ALJ Did Not Err in Rejecting the Third Party Report

2          The Court finds that the ALJ correctly discounted Ms. Packer's statements.

3    The Court's decision is based on three reasons.

4          First, the ALJ rejected Ms. Packer's statements because Plaintiff's daily

5    activities reported by Ms. Packer include "driv[ing] a car and go[ing] out daily[,] . . .

6    shopping in stores and on the phone." (AR at 18-19.) The ALJ concluded that Ms.

7    Packer's "responses to [the Third Party Function Report] are exaggerated and

8    inconsistent with the admitted activities." (*Id.* at 19; *see also id.* at 475-82 (Third

9    Party Function Report completed by Ms. Packer and dated February 14, 2008).)

10   Inconsistencies in a lay witness's statements regarding the claimant's level of

11   functioning are a germane reason for giving the lay witness testimony limited

12   weight. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Ditto v.*

13   *Comm'r of Soc. Sec. Admin.*, 401 Fed.Appx. 192, 193-94 ("inconsistencies in

14   [plaintiff's] husband's statements regarding his wife's level of functioning" is

15   germane reason).

16         Second, the ALJ properly rejected Ms. Packer's statements based on the fact

17   that they were inconsistent with Plaintiff's treatment, work activity, and the

18   objective medical evidence of record. (AR at 19 ("evidence is inconsistent with . . .

19   other evidence in the records").) "One [germane] reason for which an ALJ may

20   discount lay witness testimony is that it conflicts with medical evidence." *Lewis*,

21   236 F.3d at 511. The ALJ's finding is supported by the record. (*See, e.g.,* AR at 18

22   (ALJ finding Plaintiff inconsistent with treatment and medication compliance), 679-

23   80 (Plaintiff's testimony that she was working part-time in a school cafeteria in

24   2009).)

25         Third, the ALJ rejected Ms. Packer's third-party report because "the evidence

26   is colored by kinship [and] the person's expenses may be reduced, depending on the

27   outcome of the hearing." (AR at 19.) If supported by substantial evidence, bias and

28   financial motive may serve as legitimate reasons to discredit the testimony of a third

7

1   party.  *See, e.g., Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Buckner v.*
2   *Apfel,* 213 F.3d 1006, 1013 (8th Cir. 2000).  Here, Plaintiff lives in a house with Ms.
3   Packer and their cousin.  (*See* AR at 560.)  Ms. Packer and Plaintiff both stated that
4   Ms. Packer assists Plaintiff with various daily tasks.  (*See id.* at 475 (Ms. Packer's
5   statement that she takes Plaintiff to the doctor), 477, 485, 487.)  Accordingly,
6   substantial evidence supports the ALJ's discounting of Ms. Packer's testimony
7   based on bias and financial motive.

8   Thus, the Court finds that the ALJ provided sufficient reasons germane to Ms.
9   Packer for giving her statements less weight.

10   B.  Evaluation of Plaintiff's Obesity

11   Plaintiff argues that "the ALJ held that since the alleged onset date, plaintiff's
12   morbid obesity was a severe impairment."  (Joint Stip. at 4-5.)  Plaintiff contends
13   that "Plaintiff's obesity is compounded by chronic back pain, leg pains, thigh pain,
14   knee pain, asthma, and obstructive sleep apnea. . . . [Nevertheless,] the ALJ's
15   decision is devoid of a factual analysis assessing the impact of Plaintiff's obesity at
16   the various stages of the disability determination process."  (*Id.* at 8.)

17   1.  The ALJ Must Determine the Effects of Obesity at Various
18       Points of the Sequential Evaluation Based on Evidence in the
19       Record

20   Although the Commissioner delisted obesity from the Listing of Impairments
21   in October 1999, he issued a Social Security Ruling [5] ("SSR") in 2002 that
22   instructed ALJs of the continued role of obesity in disability evaluations.  *See* SSR

23   _____

24   [5]  "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the
25   Act's implementing regulations and the agency's policies.  SSRs are binding on all
     components of the [Social Security Administration].  SSRs do not have the force of
26   law.  However, because they represent the Commissioner's interpretation of the
     agency's regulations, we give them some deference.  We will not defer to SSRs if
27   they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246
28   F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

1  02-01p, 2000 WL 628049, at *1.  SSR 02-01p recognizes "that the combined effects

2  of obesity with other impairments may be greater than the effects of each of the

3  impairments considered separately[]" and that adjudicators must consider obesity

4  under all steps of the disability analysis, "including when assessing an individual's

5  residual functional capacity."  *Id.*; *see also Celaya v. Halter*, 332 F.3d 1177, 1182-

6  83 (9th Cir. 2003) (ALJ has responsibility to consider "interactive effect" of obesity

7  on claimant's conditions; responsibility triggered when obesity is implicitly raised

8  by claimant's symptoms, a review of the record demonstrates claimant's obesity is

9  close to listing criterion, and claimant is pro se).

10      Because there is no listing for obesity, "an individual with obesity 'meets' the

11  requirements of a listing if he or she has another impairment that, by itself, meets the

12  requirements of a listing."  SSR 02-01p, 2000 WL 628049, at *5.  Equivalence is

13  also found "if an individual has multiple impairments, including obesity, no one of

14  which meets or equals the requirements of a listing, but the combination of

15  impairments is equivalent in severity to a listed impairment."  *Id.*

16      However, the claimant "bears the burden of proving that she has an

17  impairment that meets or equals the criteria of [a listed] impairment[.]"  *Burch v.*

18  *Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (internal quotation marks, citation, and

19  ellipses omitted).  Further, an "ALJ will not make assumptions about the severity or

20  functional effects of obesity combined with other impairments.  Obesity in

21  combination with another impairment may or may not increase the severity or

22  functional limitations of the other impairment.  The ALJ [must] evaluate each case

23  based on the information in the case record."  *Id.* at 682 (citing SSR 02-01p)

24  (brackets and emphasis omitted).

25              2.    The ALJ Properly Evaluated Plaintiff's Obesity

26      The Court is persuaded that the ALJ did not commit reversible error in his

27  evaluation of Plaintiff's obesity.  Three reasons guide this determination.

28      First, although the ALJ did not provide a discussion regarding the effects of

Plaintiff's obesity in combination with her other impairments in subsequent steps of the five-step sequential evaluation process, the ALJ did find that Plaintiff's "morbid obesity" constituted a severe impairment at step two.  Thus, it is not clear that the ALJ failed to consider Plaintiff's obesity in making his step three and step four findings.  *See Hamilton v. Astrue*, 2010 WL 3748744, at *8-11 (C.D. Cal. 2010) (finding no reversible error where ALJ found plaintiff's obesity to be severe impairment at step two but did not otherwise discuss the combined effect of obesity with her other impairments in subsequent steps).

However, assuming *arguendo* the ALJ failed to do so, Plaintiff cites to no evidence that any physician or other medical provider indicated that her obesity exacerbated her impairments or resulted in any functional limitation, as is her burden.  (*See generally* Joint Stip. at 3-9, 12.)  A review of the record indicates that, apart from a single passing reference to obesity possibly causing Plaintiff's back pain, (*see* AR at 143), Plaintiff's physicians, treating or otherwise, did not opine that Plaintiff's obesity contributes to her limitations.  (*See generally id.* at 138-282, 497-674); *see Morphew v. Astrue*, 2009 WL 2590193, at *15 (E.D. Cal. Aug. 20, 2009) (apart from "single passing reference to obesity possibly causing [plaintiff's] back pain," record did not indicate that plaintiff's obesity exacerbated her other impairments).

Accordingly, given Plaintiff's failure to present evidence in an effort to establish equivalence or demonstrate that her obesity was the cause of her limitations, the ALJ was not required to compare her impairments to any listing in an equivalency determination or conduct a multiple impairment analysis including obesity in his RFC determination.  *See Burch*, 400 F.3d at 684 ("Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider."); *Lewis*, 236 F.3d at 514 (ALJ not required to discuss combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence in

10

1   an effort to establish equivalence).

2        Second, while Plaintiff did provide testimony that her obesity contributes to

3   her back, leg, and thigh pain and difficulty standing, (*see* AR at 689), the ALJ

4   properly discounted Plaintiff's credibility, which Plaintiff does not dispute here.  In

5   his credibility determination, the ALJ noted that Plaintiff worked part-time in 2007

6   "performing in-home support services" and in 2008 and 2009 at an "unspecified

7   after-school program" and at a "school cafeteria job." (*Id.* at 17.)  The ALJ also

8   found that Plaintiff was "non-compliant with regard to her medication" and she

9   exaggerated her symptoms.  (*Id.* at 18.)  Accordingly, the ALJ properly relied on the

10  medical evidence as a whole and found that prior to June 1, 2009, Plaintiff retained

11  the RFC to perform light work.  (*Id.* at 15); *see Collins v. Astrue*, 2009 WL 3112402,

12  at *19 (E.D. Cal. Sept. 23, 2009) (although plaintiff's physicians noted she was

13  morbidly obese, ALJ properly found plaintiff retained RFC to perform work,

14  including stand and walk up to six hours in an eight-hour workday, based on record

15  as a whole).

16       Third, although Plaintiff cites to *Celaya*, 332 F.3d at 1182, in support of her

17  proposition that the "ALJ erred by not considering the impact of her obesity on her

18  other impairments," (Joint Stip. at 4, 7), unlike the claimant in *Celaya*, Plaintiff was

19  represented by counsel.  *See Celaya*, 332 F.3d at 1182; *Burch*, 400 F.3d at 682.  Yet,

20  Plaintiff has failed to point to any medical evidence of her obesity causing functional

21  limitations.

22       The Court concludes that the ALJ did not commit reversible error in

23  connection with his consideration of Plaintiff's obesity.

24  ///

25  ///

26  ///

27  ///

28  ///

1

2        Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

3  **AFFIRMING** the decision of the Commissioner denying benefits.

4

5  Dated: April 18, 2011                    _____

6                                                      Hon. Jay C. Gandhi
                                                    United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12